The plaintiffs could only maintain the action by showing that they were the owners of the cloths, and entitled to the possession of them, and that they were tortiously taken and detained by the defendant.
1. As to their title: Between February and June, 1853, the plaintiffs furnished to Smith Brothers, calico printers, near Philadelphia, some 6,000 or 7,000 pieces of cloths, for printing, under an agreement of the following nature: The plaintiffs were to buy the cloths, and Smith Brothers to print them; after being printed, and returned to the plaintiffs, they were to advance one cent per yard on one style of the goods, and one and one-half cents per yard on another style, to Smith Brothers; and, when they were sold, and the cost of the cloths and the plaintiffs' commissions for selling were deducted from the proceeds of the sales, any balance remaining was to be paid over to Smith Brothers. Of the cloths furnished by the plaintiffs, and printed under this arrangement, 2,096 pieces were sent, in October, 1853, to Hoyt, Tillinghast Co., of New York, to sell on commission, the latter firm agreeing to make an advance on them, of seven and a half cents per yard, and which advance was made, to the amount of $2,900; of which the plaintiffs received $2,100, and Smith Brothers the sum of $800. It was to recover the possession of these printed cloths, consigned for sale to Hoyt, Tillinghast 
Co., that this action was brought.
The cloths were originally the property of the plaintiffs; and I think they did not part with the title to them under the agreement with Smith Brothers, under which they were printed. There is nothing in that agreement to indicate a sale of the goods, or to create any title to them, when printed, in Smith Brothers. It created, at most, only a bailment; *Page 350 
Smith Brothers being bound to return the identical goods they received. Returning others, would not have been a compliance with the agreement. The goods remained the property of the plaintiffs, and they were only bound to account to Smith Brothers for the printing; the amount of which was to be arrived at in the mode pointed out by the agreement. (Malloy v. Welles, 4 Comst., 85; Hurd v. West, 7 Cow., 752; Foster v. Pettibone, 3 Seld., 433; Barker v. Roberts, 8 Greenl., 101; Hyde v.Cookson, 21 Barb., 92.) The only case that would seem to be opposed to this construction of the agreement is that ofJenkins v. Eichelenbergher (4 Watts, 121). But that case differs from the present, in some material respects; and cannot be sustained upon the principles held by our own courts, in the cases cited. The title to the cloths consigned to Hoyt, Tillinghast Co., to sell, and which were in their possession after October, 1853, must be deemed to have been in the plaintiffs.
It was not enough, however, that they held the title to enable them to maintain the action; though the judge trying the cause appears to have acted on this assumption. But two questions were submitted to the jury (the judge, although requested, refusing to submit any others), viz.: whether the 2,096 pieces of goods consigned to Hoyt, Tillinghast Co., were printed on cloths which had been furnished by the plaintiffs to Smith Brothers, and the value of the goods so consigned to Hoyt, Tillinghast Co.; and the jury were directed (should they find the first question submitted to them in the affimative), to render a verdict for the plaintiffs, for the value of the goods remaining unsold at the time of the service of the attachments, deducting advances, expenses and charges up to the time of sale. This was, in effect, withdrawing the question from the jury, and holding, as a matter of law, upon the evidence, that the plaintiffs were entitled to the possession of the goods when the action was brought, and that the defendant, in what he did, was a trespasser and liable to an action by them.
This, I think, was error. The plaintiffs, though having a general property in the goods, could not recover unless entitled *Page 351 
to the possession when they commenced their action. The cloths were in the hands of Hoyt, Tillinghast Co., the factors of the plaintiffs and Smith Brothers, to make sale of them, for the purpose of reimbursing the plaintiffs for the cost of the cloths, and Smith Brothers for the printing. This was in pursuance of an arrangement made by the agent of the parties, and by which arrangement Hoyt, Tillinghast Co. were to make an advance of seven and a half cents per yard on the cloths. The factors advanced $2,900 in the early part of October, 1853, $2,100 of which went to the plaintiffs, and $800 to Smith Brothers. This action was commenced in May, 1854, at which time sales had been made by Hoyt, Tillinghast Co., to the amount of $1,968, subject to a deduction for expenses, charges and commissions. Hoyt, Tillinghast Co. were in the possession of the goods when the plaintiffs brought their action, and were entitled to hold them for their advances. The plaintiffs were not entitled to the possession. I cannot see, therefore, how they were in a position to maintain the action. They could not have maintained trespass, for the sheriff did not interfere with their possession, nor could they have maintained trover, not having the possession, or the present right of possession. To warrant trover, the plaintiffs should have had a present right of possession in the chattels. The possession of the cloths was in Hoyt, Tillinghast 
Co., and they having a lien upon them for advances, the right of possession was in them. (Bush v. Lyon, 9 Cow., 52.) But in order to maintain replevin, the plaintiff must show a right to have delivery of the property at the time of the commencement of the suit. The proceeding is partly in rem, and, unlike trespass or trover, which seeks damages only. (Wheeler v. Train, 3 Pick., 258; Sharp v. Whittenhall, 3 Hill, 576.) The provisional remedy, under the Code, for the claim and delivery of personal property, and which was intended as a substitute for the provisional relief theretofore obtained in the action of replevin, provides that the plaintiff, in an action to recover the possession of personal property, may claim the immediate delivery of it. (Code, §§ 206-208.) In this case, *Page 352 
the plaintiffs could not have had an immediate delivery of the property; and instead of showing a right to have delivery at the commencement of the suit, they showed affirmatively that they had not.
Again, conceding the title to the prints to have been in the plaintiffs, and they had the right to have delivery of them at the commencement of the suit, the defendant was not shown to have done anything for which he was liable to an action by any person. Two warrants of attachment against Smith Brothers, as non-residents, were delivered to him, as sheriff, to be executed. One of his deputies went to the store of Hoyt, Tillinghast Co., and served on the latter a certified copy of the attachment, with a notice indorsed on it, requiring them to furnish him with a certificate of the property held by them belonging to Smith Brothers. The prints were then in Hoyt Co.'s store, mixed up with other goods, and the deputy-sheriff did not see or touch them. Hoyt Co., knowing no others interested in the goods than Smith Brothers, furnished the deputy with a statement of the amount of prints received on sale, the amount which they had advanced on the goods, and the amount and parcels which had been sold; the deputy saying that he did not want the property, but only the certificate. He wanted to attach the interest of Smith Brothers. Nothing more was done. The defendant never had the property in his possession or under his control. Neither he nor his deputies ever saw it. Hoyt, Tillinghast Co., the plaintiffs' agents, continued in unmolested possession, and made sales of the goods. They had sold to the amount of $631.56, when the deputy-sheriff served a copy of the attachment; they sold to the further amount of $1,337.37, before this action was commenced, and the remainder of the entire consignment, afterwards and before the end of the year; and at the time of the trial, which occurred in May, 1855, they admitted that they had a balance of money in their hands, due to the account of Smith Brothers, after deducting expenses, charges and commissions, of $1,856.76. *Page 353 
There was no tortious act done by the defendant. He did not take into his possession or under his control the property in question, in defiance or exclusion of the owner. The notice given by him indicated that he did not intend to interfere with the possession of the goods. It was the notice prescribed by section 235 of the Code, in cases where the right, interest or property, is incapable of manual delivery. What he did would clearly not have rendered him liable to an action, at the suit of Hoyt, Tillinghast Co., to recover the possession of the property. In fact, the act of the defendant did not amount to an attachment of the property. It was not a case where an attachment could be executed by leaving with the individual holding the property a certified copy of the warrant of attachment, with a notice showing the property levied on. (Code, § 235.) The property was not incapable of manual delivery; and no notice was ever left with Hoyt, Tillinghast Co. showing the property levied on. After obtaining the certificate under section 236 of the Code, from Hoyt, Tillinghast Co., nothing further appears to have ever been done that looked like intermeddling with the goods. This case is not at all like that of Wintringham v. Lefoy (7 Cow., 735). There the officer levied his execution, took the property into his possession, though there was no manual seizing of it, and was about to take it away, and would have done so but for the security given him that it should be forthcoming on the execution. Here was clearly a tortious intermeddling with the goods of another. But in the present case, as the defendant neither took possession of the goods, nor did any act subjecting the goods to his control, nor undertook to control them in defiance and exclusion of the owner, he was not liable to an action as a trespasser. It was said in the court below that the effect of the attachment was to disaffirm the title of the plaintiffs, and was, in legal effect, an assumption of control over the goods as the property of Smith Brothers, notwithstanding the sheriff did not take actual possession of the goods. But if this was so, and the defendant did nothing in respect to the property but serve the attachment on Hoyt, Tillinghast Co., and *Page 354 
assume to levy it on the interest of Smith Brothers, he would not be a trespasser. The proposition, however, is not sound. As well might it be said that a creditor, by a sale under execution against a mortgagor, disaffirmed the title of a mortgagee under a mortgage in which the right of possession was in the mortgagor. It must have been on some notion of this kind that the judge at the trial refused in the first place to nonsuit the plaintiffs, and afterwards refused to charge that if the defendant did not take into his possession or under his control the property sued for, or did not, at the commencement of the action, detain from the plaintiffs the property sued for, having the same in his possession or under his control, they could not recover; and charged, as matter of law, that if the title to the goods was in the plaintiffs, the defendant was liable to respond to them for their value.
This case presents singular features. A party not in possession of goods or having a present right of possession, but the possession being in his bailor to make sale with an undischarged lien on them for advances, brings his action against a third person who has neither disturbed the possession of the bailor, nor in any way subjected the goods to his control, nor done anything but serve a copy of a warrant of attachment on such agent, to recover the possession of such goods. Instead of submitting the questions of fact to the jury under proper instructions as to the law, the judge substantially instructs the jury that, if they found one fact, viz.: that the goods consigned to the agent for sale were printed on cloths furnished by the plaintiffs to the printers, they should find a verdict for the value of the goods remaining unsold at the time of the service of the attachments, less advances, expenses and charges of the agent up to the time of sale. Under this instruction the jury found a general verdict for the plaintiffs, and assessed the value of the property at $5,619.37, being the value as found by them, without any deduction for advances, expenses or commissions. The case is ordered in the first instance to be heard at general term on exceptions. The general term overruled the exceptions, and *Page 355 
gave judgment for the plaintiffs, not for the amount of the verdict as found by the jury, but for that amount deducting the advances, charges and expenses of Hoyt, Tillinghast Co., and, without any authority to do so, ordered a reference to report the amount of such deductions. The property had been sold under the original consignment without any interference on the part of the plaintiffs or defendant with the consignees' rights; and the court, finding it impossible under the evidence to award a return of the property, gave judgment for its value, less the amount of Hoyt, Tillinghast Co.'s advances, charges and expenses. Yet the only judgment authorized was the alternative one prescribed by section 277 of the Code, viz.: a return of the property, or the value thereof, in case return could not be had.
The judgment of the Superior Court should be reversed, and a new trial ordered.