GROSSMAN *v.* WALTERS *et al.*

(*Supreme Court, General Term, First Department.* October 24, 1890.)

1. SALE—RIGHTS AND REMEDIES OF PARTIES—RESCISSION FOR FRAUD.

On purchases of goods by K., made partly in May, but mostly in June, credit was obtained by him upon statements as to his means, made either to the dealers directly, or to an association which communicated the same to them, to the effect that he had a large unimpaired capital. He had been insolvent during several months, and testified that he was aware of his insolvency in the middle of June, but made purchases until June 29th, when he sold his entire stock, but made no payments for the goods thus purchased. *Held*, that his fraud would sustain a recovery of the goods from his vendees, unless they purchased from him in good faith, and for a valuable consideration.

2. SAME—BONA FIDE PURCHASERS—NOTICE.

The goods were sold by K. to C. & Co., part of the price being the satisfaction of an indebtedness to them, and the balance being paid in cash. The employe of C. & Co. with whom the transaction took place had been informed by K. previously that he was embarrassed, and could not continue his business. The purchase by C. & Co. was made speedily, for a round sum, and without any inventory, and they immediately sold the goods in a similar manner to one of their employes, for a less price, who paid in part money obtained from the cashier of C. & Co., and the balance by his note to C. & Co. He, as quickly as possible, sold the goods through auctioneers, and from the proceeds repaid the loan and paid off his note before it became due. *Held*, that these facts warranted a finding that these purchases were made with knowledge that K. disposed of the property to defraud his other creditors, and that the payment of an adequate consideration did not render the purchases valid.

3. REPLEVIN—EVIDENCE OF VALUE.

In an action to recover goods obtained on credit by fraudulent representations, there was no direct evidence of value, but the prices agreed to be paid by the purchaser, and by subsequent purchasers under him, were shown. *Held* that, in the absence of evidence to the contrary, the inference was that the goods were worth the price for which they were originally purchased.

4. WITNESS—EXAMINATION—STATEMENTS IN FORMER PROCEEDINGS.

On the examination of a witness, his sworn statements on an examination supplementary to execution were brought to his attention, and he was asked if they were true, and, so far as they were important or material, he testified that they were true. *Held*, that this was not improper, as such former testimony was not itself given in evidence.

5. REPLEVIN—WHEN LIES—AGAINST AUCTIONEER.

Replevin for goods obtained from plaintiff by fraudulent representations by a purchaser may be maintained against auctioneers having actual possession of the goods by delivery to them, for the purpose of sale, from a subsequent purchaser with notice.

6. APPEAL—REVIEW—HARMLESS ERROR—REPLEVIN.

That the report of a referee in favor of plaintiff in replevin, in finding the damages and the value of the chattels, as required by Code Civil Proc. N. Y. § 1726, states the aggregate of the value and the damages, instead of a separate finding as to each, does not prejudice defendant, and must be disregarded on appeal by him. Distinguishing *Wood* v. *Orser,* 25 N. Y. 348.

7. APPEAL—DECISION—MODIFICATION OF JUDGMENT.

An action to recover possession of goods fraudulently purchased on credit from several dealers was brought by the assignee of all of them, and he recovered a judgment in respect of all the goods sued for; but on appeal it appeared that the evidence of fraud as to one sale was radically defective, and that the interest allowed on another item was excessive. *Held*, as such sale was separate and distinct from the others, the judgment could be corrected without a reversal, by a proper deduction, with the assent of plaintiff, in respect of such sale and the excess of interest.

Appeal from judgment on report of referee.

Action by George J. Grossman against Ephraim M. Kantrowitz, Richard N. Walters, and Charles F. Walters, to recover possession of goods alleged to have been fraudulently purchased from various assignors of plaintiff by defendant Kantrowitz, and of which defendants Walters were alleged to be in possession. Defendant Kantrowitz did not answer the complaint. Code Civil Proc. N. Y. § 1726, relating to actions to recover chattels, provides that "the verdict, report, or decision must fix the damages, if any, of the prevailing party. When it awards to the plaintiff a chattel which has not been replevied, or where it awards to the prevailing party a chattel which has been replevied, and afterwards delivered by the sheriff to the unsuccessful party, or to a person not a party, it must also, except in a case specified in the next section, fix the value of the chattel at the time of the trial." From a judgment for plaintiff, entered on the report of a referee to whom the action was referred by consent, and which awarded to plaintiff the return of all the goods mentioned in the complaint, or a certain sum as their value in case a delivery could not be had, defendants Walters appealed.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*S. K. Kneeland,* for appellants. *Abram Kling,* for respondent.

DANIELS, J. The plaintiff, as the assignee of his own firm and of six other parties, brought this action to recover the possession of personal property sold and delivered to Ephraim M. Kantrowitz. The sales were made partly in May, but mainly in June, 1888, and they consisted generally of furniture and carpetings. On the 29th of June, 1888, Kantrowitz, the purchaser, sold and transferred to the firm of H. B. Claflin & Co. "the stock, fixtures, store and office furniture, good-will, trade-marks, horse, harness, and truck, and all other property connected with or pertaining to the store of the party of the first part, situated at No. 1 Fourth avenue in the city of New York; also the goods on storage, or contained in the basement at No. 212 Bowery, belonging to the said party of the first part." Claflin & Co., on the same day, sold the property to Miles O'Brien, who placed it in the possession of the appellants, as auctioneers, for sale. The parties from whom Kantrowitz had purchased the furniture and carpetings claimed to have been induced to make the sales by means of fraudulent representations made by him concerning his pecuniary condition, and that he made this transfer afterwards to the firm of Claflin & Co. to defraud his creditors, and that they received the transfer understanding that to be at the time his intention, and, to carry that more completely into effect, that they transferred the property to Miles O'Brien. The referee adopted this view of the case, and held the plaintiff to be entitled to recover the goods in controversy, or their value. At the time of the commencement of the action, the goods were in form taken by the sheriff under process of claim and delivery, but, upon an undertaking executed on behalf of the appellants, the goods were restored to them; and, by the final conclusion of the referee, it was determined that the plaintiff was entitled to the possession of the property, and, if possession could not be obtained, to the value thereof, with interest, amounting to the sum of $2,406.82.

The conclusions of the referee concerning the nature of the purchases made by Kantrowitz and the subsequent sales of the goods have been criticised with uncommon severity by the counsel for the appellants. It has been urged that these conclusions were devoid of evidence, and that the judgment accordingly is very clearly erroneous. But very direct proof was given that the sales made by Elliott & Cougle, Otto Denecke, and the Anderson & Blatt Folding-Bed Company were procured by means of direct misrepresentations; for Kantrowitz is shown to have represented to the persons acting on behalf of these vendors, shortly prior to the time of the sales, that he had the sum of $18,000, which he had received from his preceding firm, and put into the business

commenced by himself, as his capital. The representations in this manner made were either accompanied with the statement that he was free from all liabilities, or the language employed by him in each instance was such as to produce the impression in the minds of the persons to whom the representations were made that he had this sum as unimpaired capital, upon which he transacted his business. The firms of Grossman & Sons and Blanck & Co. are stated to have sold and delivered their goods upon information concerning the standing of Kantrowitz obtained from the Lyon Furniture Association. This was an association in the interest of the dealers in furniture, obtaining and furnishing information to persons and firms in the business relative to the financial standing of dealers applying for credit; and evidence was given from which the referee could very well conclude, as he did, that Kantrowitz had made substantially the same representations that he did to the other persons with whom he dealt to this association as to his financial condition; and these two firms are stated to have made their sales to him upon the faith of the information obtained from that association.

The defendant Kantrowitz was examined as a witness on behalf of the plaintiff, and from his testimony, which certainly may be assumed to be credible so far as it was against himself, it was shown that he was aware of his own insolvency as early as the 15th of June, 1888, and probably as early as the commencement of his business; for he does not appear to have encountered any substantial loss in his business from the 17th of February, when he made the statement to the Lyon Furniture Association, to the time of his sale to Claflin & Co., and this condition of his affairs exhibits the fact to be that when he made the representations they were untruthful, and designed to deceive the persons to whom they were made. For, notwithstanding the concession made by himself that he was aware of his own insolvency as early as the middle of June, 1888, he still continued to purchase goods from persons who sold him under the evident impression that his representations were truthful. From Elliott & Cougle he purchased a folding-bed for the price of $72, on the 29th of June, which, in compliance with his order, was sent to the city of Chicago. On the 26th of June he purchased goods amounting to the sum of $51 of the firm of Blanck & Co.. which were delivered on the 29th; and on the 29th of June he also purchased bedding of Otto Denecke. These last purchases were made on the same day and the day preceding the sale of his entire stock to H. B. Claflin & Co., and after he had become, from his own evidence, entirely aware of his insolvent condition and inability to continue his business, and they, together with the other evidence, supply unmistakable proof that he was actuated with a fraudulent intention in making his purchases; and that is further confirmed by the fact that no part of the moneys received. by him from the sale of his stock was appropriated to the payment of these creditors. As to him, therefore, the plaintiff, as the assignee of these parties, was entitled to recover the articles sold after they went into the possession of the appellants, and they had been demanded from them, and they had refused to deliver them.

A special objection has been taken to the right of the plaintiff to recover as the assignee of the Indiana Furniture Company, on the ground that the company was not induced to sell its furniture to Kantrowitz by means of any false representation made to that company. But the evidence of the agent Alexander C. Kelly deprives this objection of its support, for the representation was made by Kantrowitz directly to him, and was then communicated by him to the company in Indiana, which ordered the sale of the goods; and the witness testified that after that the goods were shipped on the basis of the statement made to the witness. There was nothing, therefore, in this sale substantially distinguishing it from the others which have been referred to. The facts that the referee mistook the time when the statement was made to the Lyons Furniture Association, or assumed the immaterial circumstance that

·Elliott & Cougle were subscribers to that association, are without the least materiality in the case. And equally so are other immaterial circumstances mentioned or referred to in the report, for the evidence was manifestly sufficient to support the import of any conclusion, deemed by the referee to be sustained by it, that Kantrowitz had fraudulently misrepresented his circumstances to these different vendors, and had obtained their goods with the intention of unlawfully depriving them of their property. As to these facts, which are the controlling facts in this part of the case, very little room was left for doubt or question. After having obtained the property in this manner, Kantrowitz could deprive the vendors of their right to follow and obtain its return from him, or other persons succeeding to his title, only by making a *bona fide* sale of it for a valuable consideration. The burden of establishing that to be the nature of the sales made, was placed upon the persons claiming under those sales. *Stevens* v. *Brennan*, 79 N. Y. 254, 258; *Weaver* v. *Barden*, 49 N. Y. 286. And to meet this requirement of the law evidence was given concerning the sale made to H. B. Claflin & Co., showing that Kantrowitz was indebted to that firm in the sum of $3,765.35, and made the sale to the firm to satisfy that indebtedness, and received from the firm its check for the sum of $6,234.65, making in all the sum of $10,000, for which the sale was made to Claflin & Co. The transaction resulting in this sale took place between Kantrowitz and Mr. Jordan, who was employed in the business of H. B. Claflin & Co. Kantrowitz testified that he had previously informed Jordan that he was embarrassed in his business, and that he could not stay in his business, and had told him that his indebtedness amounted to the sum of $80,000.

The firm of H. B. Claflin & Co. are chargeable with the information in this manner acquired by Jordan in the transaction of the business, and must be held to have been aware of the fact that Kantrowitz had reached the point where he could not continue in his business; but that, of itself, would not prevent them from obtaining a valid title to the property sold, so far as the consideration paid for it was valuable, as it certainly was to the extent of the check given by them to Kantrowitz. But there were circumstances attending the sale and the conduct of their representative in procuring it that indicated the conviction on his part that Kantrowitz designed to dispose of this property in fraud of the rights of his other creditors. These circumstances consisted mainly of the important fact that the property was purchased speedily, and without any inventory, or such careful examination as apparently would have been made in the exercise of good faith. It was taken at a round sum of $10,000, without any such investigation as would ordinarily be expected to be made by careful or discreet purchasers of that amount of property, not consisting generally of articles in which this firm was engaged in dealing. Then, under an evident consciousness, not denied by Jordan, that the purchase might not be capable of being sustained, a sale was immediately made, through the intervention of Jordan, to Miles O'Brien, another person in the employment of H. B. Claflin & Co. This sale was made for the sum of $500 less than the price for which the property was bought by Claflin & Co., and the reduction does not appear to have been caused by any observation or examination leading to the supposition that the firm had been mistaken as to the value of the property bought; but the object of this sale could very well by the referee be inferred to have been the confirmation of their purchase in such a manner that it should not be disaffirmed by the creditors of Kantrowitz. This probability is increased in its effect by the fact that O'Brien obtained from the cashier of the firm of Claflin & Co. the $3,000 he paid to Jordan upon his purchase. The residue, amounting to $6,500, was included in a promissory note of O'Brien given to the firm, due in three months afterwards. O'Brien did not require the property for any special purpose; neither was any inventory of it made apprising him of the articles, or the extent of the stock,

prior to the time of his purchase, but a general examination took place, consisting of no further consumption of time than the period of about two hours, and that, too, by persons whose business was that of dry-goods. In his testimony O'Brien states further that "I had the stock examined, and took steps, as quickly as I possibly could, to sell the stock through an auctioneer." These auctioneers were the defendants, who have appealed from this judgment. The property was placed in their possession, and it was sold by them at auction, and from the proceeds of the auction sales, which exceeded the sum of $9,500, O'Brien repaid the loan obtained by him, and also, before it became due, paid the note which had been given by him for the balance of the price. The circumstances were consistent with no other conclusion than that the property had been obtained to avoid the claims of other persons against Kantrowitz, and was sold as speedily as practicable, to secure that end; and while there was no direct proof that the purchases were made by Jordan for Claflin & Co., and from them by O'Brien, with knowledge of the fact that Kantrowitz intended to defraud his creditors in selling the stock as he did, these circumstances were such as naturally would produce the conviction of the existence of that knowledge or understanding, both on the part of Jordan and of O'Brien, and that fully warranted the referee in concluding, as he did, that these purchases were made with notice or knowledge of the fact that Kantrowitz disposed of the property to defraud his other creditors. In *May* v. *Walter*, 56 N. Y. 8, the leading facts were quite similar to those in this action, and it was held by the court that it was the duty of the judge at the trial to submit the question to the jury, whether the property had not been purchased by the vendee with intent to avoid the rights of the creditors of the vendor. The payment of an adequate consideration did not preclude that inquiry under these circumstances, for a valuable and adequate consideration is not sufficient to maintain such a purchase, where it may fairly be inferred from the facts that the purchaser understood or had notice of the vendor's fraudulent intention. *Billings* v. *Russell*, 101 N. Y. 230, 233, 4 N. E. Rep. 531; *Starin* v. *Kelly*, 88 N. Y. 418, 421. The evidence was certainly sufficient to submit this question of notice or knowledge to the deliberation of the referee, and his finding as to the existence of notice is so far supported by the proof as to render it unassailable on this appeal.

The referee found the value of the property in dispute at the time of the trial, and, while there was no direct evidence as to this value, there were circumstances from which the fact could be inferred, as he has stated it in his report; for the goods were sold to Kantrowitz at the prices which the referee has considered to be their value when the action was tried, and the sales which were made to H. B. Claflin & Co., and by them to O'Brien, and by the defendants as auctioneers, sustain the conclusion that this was the fair value of the goods in controversy; and, as no change in the market price or value of the goods was shown to have taken place between the time when they were sold and the trial of the action, the inference was fairly reasonable that the goods were of the same value at the time of the trial as they were when they were sold to Kantrowitz. The probabilities were all with the plaintiff, and the presumption, in the absence of any proof warranting a different conclusion, would be that the property continued to be of the value for which it had been sold by these different dealers.

Objections were taken to the introduction of the sworn statements of Kantrowitz, made upon his examination in supplementary proceedings, but these statements were not introduced as evidence upon the trial of this action against these defendants, but they were introduced to bring the attention of the witness Kantrowitz to the statements which he had made in the course of his supplementary examination: and then the question was asked him whether those statements were true, and, so far as they had any importance or materiality in this litigation, he testified that they were. This was not

giving in evidence the former testimony of Kantrowitz, but it was used to remind or refresh his recollection as to what he had previously sworn to concerning the facts which were the subjects of inquiry; and, having his attention directed to what had been so stated by him, he was then asked whether these statements were true, and, so far as they were of the slightest importance in the case, he testified that they were. There was, for that reason, no impropriety presented by this proceeding upon the trial.

Other objections to these parts of the case have been presented upon the argument, but they are not of such a nature as to deserve special consideration, inasmuch as the leading facts upon which its disposition depended were established on the trial, and no legal difficulty stood in the way of maintaining the action against the auctioneers, who had the actual possession of the property. The case in that respect is quite distinguishable from *McDougall* v. *Travis*, 24 Hun, 590, where the possession was no other than that of a servant. Neither is there any defect in form in the decision of the referee, or the judgment entered upon it, for it has fixed the value of the chattels in dispute, and the damages, by way of interest, the plaintiff was considered entitled to recover, as that has been required by section 1726 of the Code of Civil Procedure. But, if there should be held to be any formal mistake in this respect, the judgment cannot be reversed on account of it, for it can in no manner prejudice or injure the defendants, or those represented by them, in the least degree, and must, in comformity with sections 721–723 of the Code of Civil Procedure, be disregarded. The case contains no such defects as those in *Wood* v. *Orser*, 25 N. Y. 348, and that decision, therefore, has no application to the controversy. But it does appear that a larger amount of interest was allowed by the referee than could legally be computed for the time mentioned in the report. So, also, it appears from the evidence that the sales made by the firm of Theodore W. Bailey & Co. to Kantrowitz were not induced by means of fraudulent misrepresentations, as the others were. John W. Hoyt, the witness examined in behalf of that firm, testifies that he made the sales relying upon a statement obtained from Dunn & Co. concerning the financial condition of Kantrowitz; while it appears by the evidence of a person in the employment of Dunn & Co. that no statement was obtained from Kantrowitz by that firm, and Kantrowitz himself testifies that he made no statement of his affairs to that firm, and there was no proof in the case that he ever had made such a statement, and consequently he was not responsible for the information which Dunn & Co. may have given to the representative of Bailey & Co. Mr. Hoyt was recalled, and further examined as a witness, but he stated no more upon this subject than that Kantrowitz said: "I have money and stock enough to make a success of it." This, however, was not made, in any form, the foundation of the referee's decision as to the plaintiff's right to recover for the goods sold by Bailey & Co. He has placed that upon the statement that Kantrowitz represented himself to be worth $15,000 which was $12,000 over his debts and liabilities, and that this firm sold the goods which they delivered to him relying upon the truth of that representation. This conclusion of the referee is unsupported by the evidence, and for the goods which they sold, amounting to the sum of $768.62, the plaintiff did not accordingly establish his right to maintain the action. As to this part of the case, the evidence was radically defective; but it does not follow that the judgment should be reversed on account of this error, for this was a separate and distinct sale from each of the others alleged as the ground of the sixth cause of action mentioned in the complaint, and, where that is the nature of the demand erroneously found to exist, the judgment may be corrected by its deduction, with the assent of the plaintiff. *Crim* v. *Starkweather*, 88 N. Y. 339, 341. On this account, and to correct the allowance of interest contained in the report of the referee and the judgment, the judgment should be reversed, and a new trial ordered,

with costs to abide the event; unless, within 20 days after notice of the decision, the plaintiff shall stipulate to deduct this sum of $768.62, with the interest upon it and the excess of interest allowed upon the other items, from the judgment. In case of such stipulation being given, then the judgment will be modified by correspondingly reducing its amount, and affirmed as modified, without costs of the appeal to either party. All concur.