The Black River Insurance Company, Respondent, *v.* The New York State Loan and Trust Company, Appellant.

The capital stock of the plaintiff, a fire insurance company, having become impaired, the stockholders were required, by the superintendent of insurance, to make up the deficiency. It was arranged between certain of plaintiff's officers and P. & Co., private bankers, P. being also plaintiff's president and one of its directors, that the stockholders should give their notes for the amount required, which were to be taken by P. & Co., and plaintiff given a cash credit therefor—such credit, however, not to be drawn upon any faster than the notes were paid; the makers were not to be called upon for payment unless the exigencies of the company absolutely required, and unless voluntarily paid, that they were to be paid out of

dividends. Notes were executed in pursuance of the agreement, payable at P. & Co.'s bank, to the order of the makers, and indorsed by them; they were delivered to plaintiff's officers and by them delivered to P. & Co., who credited them to plaintiff and charged to discounted bills. On plaintiff's books they were charged to P. & Co. as cash. P., as president, and plaintiff's vice-president, made affidavit that an amount, which included that so credited, had been realized in cash, and was absolutely held by plaintiff subject to no lien or claim, which affidavit was forwarded to the superintendent; and afterwards a report, under oath, was made to him, stating that the stockholders' notes had been paid in cash to plaintiff and amount deposited in bank, without any conditions or reserve, and thereafter the superintendent, upon the strength of the report and the assurance of the plaintiff's officers, certified that his order had been complied with. Plaintiff's board of directors never took any action in reference to the notes. In plaintiff's annual report for 1874 the credit thus obtained was reported as cash on deposit. In June, 1874, P. & Co. pledged the notes to defendant as collateral, and some time after that failed, owing plaintiff a large amount. In an action to recover the notes, *held,* that plaintiff never had title to them; it had no right to take them and never authorized the taking; its officers, in making the arrangement and taking the notes, were not acting, and had no authority to act, for it, but acted as agents of the stockholders; also, that if plaintiff took title, it parted therewith to P. & Co.; no formal authorization of its board of directors was necessary for that purpose; its managing officers could negotiate the notes without such action; and that, therefore, the complaint should have been dismissed.

(Argued March 21, 1878; decided April 16, 1878.) '

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the facts are set forth sufficiently in opinion.

*William Allen Butler,* for appellant. The question as to the title of the notes at the commencement of this action was one of law. (*Ætna Nat. Bk.* v. *Fourth Nat. Bk.,* 46 N. Y., 82.) The amount of the notes was not cash as between plaintiff and the insurance department. (*Tuckerman* v. *Brown,* 33 N. Y., 297, 304.) The notes having been duly indorsed were negotiable commercial paper, the title to which passed by delivery. (*Murray* v. *Lardner,* 2 Wall., 110,

121; *Goodman* v. *Simonds*, 20 How. [U. S.], 343; *Welch* v. *Sage*, 47 N. Y., 143; *Seyvil* v. *Nat. Cur. Bk.*, 54 id., 238.) To invalidate defendant's title the burden was on plaintiff of proving that when defendant acquired the notes he knew that a defect existed in the title. (*Welch* v. *Sage*, 47 N. Y., 147; *Belmont* v. *Hoge*, 35 id., 67; *Birdsall* v. *Russell*, 29 id., 249; *Goodman* v. *Simons*, 20 How. [U. S.], 365; *Murray* v. *Lardner*, 21 Wall., 121; *Goodman* v. *Harvey*, 4 Ad. & El., 870.) Defendant could not be deprived of his character as *bona fide* holder except upon proof of bad faith. (*Chapman* v. *Rose*, 57 N. Y., 137, 140; *Evertson* v. *Nat. Bk. Newport*, 66 id., 14; *M. T. R. Bk.* v. *Crow*, 60 id., 85; *Dalrymple* v. *Hildebrand*, 62 id., 5.) The taking of these notes as collateral security, for advances made and to be made and for overdrafts, was a valuable consideration and gave the defendant full right as holder for value. (*Park Bank* v. *Watson*, 42 N. Y., 190; *Williams* v. *Smith*, 2 Hill, 301; *Bk. of N. Y.* v. *Vanderhorst*, 32 N. Y., 553–559; *F. and C. Nat. Bk.* v. *Noxon*, 45 id., 762; Story on Notes, § 195; *Fisher* v. *Fisher*, 98 Mass., 303; *Fenly* v. *Pritchard*, 2 Sand., 151.) Plaintiff, by its acts, had conferred upon G. F. Paddock & Co. the apparent title to the notes and the right to dispose of them, and is now estopped from asserting title to them against defendants, who are innocent holders without notice. (*McNeil* v. *Tenth Nat. Bk.*, 46 N. Y., 325; *Thompson* v. *Blanchard*, 4 Comst., 303; *Weaver* v. *Barden*, 49 N. Y., 286; *Davis* v. *Bemis*, 40 id., 453, note; *Bank of U. S.* v. *Davis*, 2 Hill, 452–465; *North River Bk.* v. *Aymer*, 3 id., 262–268; approved in *Farmers' Bk.* v. *B. and D. Bk.*, 16 N. Y., 125–129.) A contract of a corporation, although entered into in excess of its powers and therefore void, is, nevertheless, when executed, enforceable against the party who has received the benefit of it. (*Steam Nav. Co.* v. *Weed*, 17 Barb., 378; *Curtis* v. *Leavitt*, 15 N. Y., 9; *Bissell* v. *Mich. S. and N. J. R. R. Co.*, 22 id., 258; *Parish* v. *Wheeler*, 22 id., 494; *Palmer* v. *Lawrence*, 3 Sand., 161; *Mott* v. *U. S. Trust Co.*, 19 Barb., 568; *De Groff* v. *Am.*

*Lin. Thread Co.*, 21 N. Y., 124; Green's Brice's *Ultra Vires* [Am. ed., 1875], notes to pp. 375, 619.)

*D. O'Brien*, for respondent. It was error to hold, as matter of law, that defendant was a *bona fide* holder of the notes. (50 N. Y., 53; 52 id., 323.) Paddock & Co. having wrongfully converted the notes, they, as well as defendant, were liable to plaintiff for their value. (*Putnam* v. *Wise*, 1 Hill, 234–240; *Cumming* v. *Force*, 3 id., 282–307; *Schroeppel* v. *Corning*, 6 N. Y., 112; *Roth* v. *Palmer*, 27 Barb., 652; *Harpending* v. *Schoemaker*, 37 id., 291.) Paddock & Co. occupied the position of trustees and could not purchase or acquire title to the notes even if the parties had so intended. (*Cumberland Coal Co.* v. *Sherman*, 30 Barb., 553; *Coleman* v. *Second Ave. R. R. Co.*, 38 N. Y., 201; *Buts* v. *Wood*, 37 id., 319; *Case* v. *Carroll*, 35 id., 388; *Gardner* v. *Ogden*, 22 id., 327; *Port* v. *Russell*, 10 Am. Rep., 5 (36 M. 60); *Story* v. *Tompkins*, 8 J. R., 98; 3 N. H. Rep., 144; 3 Harrison [N. J.], 74–81; 1 Bing., 50.) Plaintiff could not, as between itself and Paddock, be divested of its title in the notes without a resolution of its board of directors authorizing a transfer. (2 R. S. [6th ed.], act 1, tit. 2, chap. 18, part 1, § 8, p. 298; 2 id., 304, 305 ; *Hill* v. *Reed*, 16 Barb., 280 ; *Elwell* v. *Dodge*, 33 Barb., 336; *Belden* v. *Meeker*, 2 Lans., 474; *Houghton* v. *McAuliffe* [Ct. App.], 26 How., 270; *Gillet* v. *Phillips*, 13 N. Y., 114; *Marsh* v. *Brett*, 16 How., 95; 5 Bosw., 319; 26 How., 270.) The burden of proving *bona fides* was upon defendant. (*First Nat. Bk.* v. *Gunn*, 43 N. Y., 298; *Hill* v. *Northrup*, 4 N. Y. Sup. Ct., 122; *Porter* v. *Knapp*, 6 Lans., 195; *Winslow* v. *Ferguson*, 1 id., 442; *Farmers'*, etc., *Nat. Bk.* v. *Noxon*, 45 N. Y., 762; 2 Bosw., 613–617; 4 Barb., 310; 12 W. R., 484; Edwards on Bills, 686; 4 N. Y., 166; 6 W. R., 615–622; 1 Hall, 619; 3 Johns. Cas., 258; 4 W. R., 581, 582; 1 Denio, 593; 9 W. R., 170–174; Moak, 12 Eng. Rep. 608; *Houghton* v. *McAuliffe*, 26 How., 270 [Ct. App.]; 2 Abb. [Ct. App. Dec.], 409.) Defendant

failed to show itself a holder for value. *Coddington* v. *Bay*, 20 J. R., 637; S. C., Johns. Ch., 54; *Farrington* v. *Frankfort Bk.*, 24 Barb., 554; *McBride* v. *Farmers' Bk.*, 26 N. Y., 454; *Curtis* v. *Leavitt*, 15 id., 146; 6 Hill, 93; 52 Barb., 601; 12 id., 407; 6 id., 445; 55 N. Y., 233; 47 Barb., 29, 37; 58 N. Y., 73; *Ocean Bank* v. *Dill*, 39 Barb., 571; *Cary* v. *White*, 52 N. Y., 138.) A defendant in trover or replevin cannot set up title in a *third* person, unless he shows some claim, title or interest in the property *derived from* such third person. (*Duncan* v. *Spier*, 11 W. R., 54; *Geiber* v. *Monie*, 56 Barb., 661; *King* v. *Orser*, 4 Duer, 438; *Hoyt* v. *Van Alstyn*, 15 Barbour, 568; *Earl* v. *Camp*, 16 W. R., 561· *Kissam* v. *Roberts*, 6 Bosw., 154.)

EARL, J.    This is an action of replevin to recover the possession of twenty-two promissory notes, the par value of which is $20,000.

The material facts of the case, which were undisputed at the trial, are as follows : In January, 1874, the capital stock of the plaintiff, a fire insurance company, located at Watertown in this State, had become impaired by losses which it had sustained, to the extent of twenty-five per cent of its capital.    This impairment came to the knowledge of the superintendent of the insurance department through an examination instituted by him under section 24 of chapter 466 of the Laws of 1855 ; and on the 28th day of January, 1874, under the same section, he made an order directing the officers of the company to require the stockholders to pay in the amount of such deficiency.    In pursuance of such order, notices were published in two newspapers designated, requiring the stockholders to pay twenty-five per cent on their stock in cash, to make good the deficiency ; and a similar notice was mailed to stockholders.

At that time George F. Paddock was president of the insurance company, and he and one Andrews were private bankers at Watertown, doing business under the firm name

of " George F. Paddock & Co. ; " and Andrews was also
one of the directors of the insurance company.

There was some difficulty in procuring the stockholders to
make cash payments, and it was therefore arranged between
certain persons who were officers of the insurance company
and Paddock & Co. that if stockholders would give their
notes, Paddock & Co. would take them, and give the com-
pany a cash credit for them ; but the company was not to
draw upon this credit faster than the notes were paid, and
the makers were not to be called upon for payment, unless
the exigencies of the company absolutely required payment
so that it could draw. The understanding was that 'the
notes, except as voluntarily paid, would be paid out of the
dividends to be made by the company to its stockholders.

Under this arrangement and understanding, most of the
stockholders were procured to give their notes instead of
paying cash. The notes were all dated January twenty-
ninth, payable in six months after date, with interest, at
Paddock & Co.'s bank ; and most of them were delivered
to some of the officers at the office of the company. They
were then taken by such officers and delivered to Paddock
& Co. under the previous arrangement and understanding.
The notes were not indorsed by the insurance company; but
each note was payable to the order of and indorsed by the
maker. At the bank they were all credited to the insurance
company and charged to discounted bills. They were entered
upon the discount book and upon the tickler, and were filed
and numbered and put away with the other discounted
paper of the bank. On the books of the insurance com-
pany they were charged to Paddock & Co. as cash. After
all this was done, Paddock and one Lord, who was vice-
president of the insurance company, made an affidavit, in
which they stated that the amount of $46,000, which
included the amount credited at the bank on account of the
notes of the stockholders given as above stated, had been
realized in cash by the company, and was then absolutely
held by it in its corporate name, and that it was subject to

no lien or claim thereon of any kind or nature by any person; and they forwarded this affidavit to the superintendent of the insurance department. Thereafter, in March, 1874, Paddock, as president, and one Moulton, as secretary of the company, made, under oath, a report to the said superintendent, for the purpose of showing a compliance with his order of January twenty-eighth, in which they stated that each one of the stockholders, who had given his note as above stated, had paid the amount in cash to the company, and that the sums thus paid had been deposited by the company in the bank without any conditions or reserve whatever. Annexed to this report was the certificate of Paddock & Co., certifying that the company had deposited in their bank the sum of $60,600.25, which amount had been collected under the requisition of the insurance department of January twenty-eighth. On the seventh of March, the deputy superintendent of the insurance department went to Watertown to verify the report which had thus been made, and was there informed by the officers of the company and also of the bank that the insurance company had the cash credit in the bank. After this examination, the superintendent of the insurance department made a certificate, to the effect that his order of January twenty-eighth had been complied with, and that the insurance company possessed the entire amount of its capital. In the annual report made by the company, for the year 1874, to the insurance department, the money credited to the company by Paddock & Co., as above stated, was reported as cash deposited in bank.

In June, 1874, Paddock & Co. pledged the twenty-two notes now in question to the defendant as collateral security, and for their recovery this action was commenced in January, 1875 , after Paddock & Co. had failed, owing the plaintiff a large sum of money, including a portion of the credit given to it on account of the notes as above stated. The plaintiff claims that it took title to the notes directly from the stockholders, and that it never parted with such title to Paddock & Co.

I am of opinion that, upon the undisputed facts of the case, the complaint should have been dismissed at the trial.

First. The insurance company never had title to these notes. It had no right to take them. It could only take cash from the stockholders. It never authorized any one to take these notes for it. Its corporate action required that cash should be paid by the stockholders, and all its corporate acts show that cash was paid to it. In making the arrangement with Paddock & Co. for the discount, and in procuring the notes and delivering them to Paddock & Co. its officers were not acting, and were not authorized to act, for it; they were acting for the stockholders. They had no general or implied power to do an unlawful act. The board of directors of the insurance company never took any action in reference to these notes; never authorized them to be taken or to be transferred, and never, in any way, ratified the acts of its officers in taking them, and never recognized them as the property of the company until it authorized this suit to be commenced for their recovery in January, 1875, long after they had been transferred to the defendant. To have taken these notes and held the title to them in any way would have served no useful purpose, but would have defeated any compliance with the law and the requisition of the insurance department; and all the corporate action of the company shows that it did not take or hold them. There was no agreement between it and the stockholders that it would take these notes. By its notice it required cash to be paid, and this the stockholders must have understood. They gave these notes that they might be discounted by Paddock & Co. under the arrangement which had been made for their benefit with that firm, and that the cash might thus be produced and paid to the company. It matters not that they delivered the notes to some of the officers of the company, for such officers had no right to take them officially, and there is nothing showing that they undertook to do so. Although officers of the company, they could act for the stockholders in this matter, and that

is all they did.    These notes would have been without consideration in the possession of the company, and it could not have enforced them.    .Hence they first had a legal inception when they were discounted by Paddock & Co.

Second.    But if the company took title to these notes from its stockholders, then it is entirely clear that it parted with the title to Paddock & Co.    If the managing officers of the company had the power to take these notes for the company, as one of the steps to a compliance with the requisition of the insurance department, then they could take a further step and dispose of them to Paddock & Co. for the cash which the law required them to have.    If formal action of the board of directors was not necessary to authorize them to take these notes, such action was not needed to authorize them to transfer them.    If the company lawfully held these notes for the purpose of raising money for a particular object, it cannot be doubted that its managing officers, acting in good faith, could negotiate them to raise the money, and they could raise the money from one of its own directors as well as from any other party.    Now, what was done? The true test is, what did the parties intend to do at the time?    There could be no compliance with the requisition of the insurance department except by an absolute transfer of the notes and an absolute credit for the proceeds.    Anything short of this would be a gross fraud, which would involve perjury which no mental reservation could alleviate.

The transfer was to be made so that the insurance company would not be liable upon the notes, and hence it did not indorse them.    It was in no way to be liable for the money credited, or else its liability would balance the credit, and nothing would be added to its net assets.    Hence the arrangement was that the bank was to discount the notes and place the proceeds to the credit of the company.    There was no agreement, expressed or implied, that the company was ever again, upon any terms, to have the notes back or that the notes were not, in fact, to be paid to Paddock & Co.    The arrangement was that the notes were to be paid

by the makers, either with money furnished directly by them or by the dividends upon their stocks. It does not affect the title that Paddock & Co. were not to call upon the makers for payment, except in an emergency; nor does it affect the title that the company promised not to draw upon the credit given it except as fast as the notes were paid. Having transferred the notes to Paddock & Co., it could observe the agreement it made in reference to leaving the deposit. All the books and entries in the bank and the books and the sworn statements and reports of the insurance company show that the title to the notes was in Paddock & Co. There was no corporate action of the company, and no action of the board of directors, except when it ordered this suit to be commenced, showing that any title remained in the company.

The leading facts upon which this discussion is based are not only undisputed, but they are in no way materially qualified by other evidence or minor circumstances. They stand out in bold relief, and must control the rights of these parties. It is not needful to determine that there was not a *scintilla* of evidence to sustain plaintiff's title to the notes. It is sufficient to say that there was not any evidence upon which a jury could properly base a verdict sustaining such title. (*Commissioners of Marion County* v. *Clark*, 4 Otto, 278.)

As the plaintiff therefore had no title to these notes, and no right to the possession of them when this action was commenced, it had no right to take them from the possession of the defendant, no matter how imperfect its title was, and its complaint should have been dismissed. (*Howell* v. *Otis*, in this court, not reported.)

The judgment must therefore be reversed and new trial granted, costs to abide event.

All concur, except ALLEN and RAPALLO, J., dissenting.

Judgment reversed.