LOUIS HOFFERMAN, Respondent, *v.* MAURICE SIMMONS, as Property Clerk of the Police Department of the City of New York, Appellant.

HARRY RADER, Respondent, *v.* MAURICE SIMMONS, Individually and as Property Clerk of the Police Department of the City of New York, Appellant.

ALBERT RIVERA, Respondent, *v.* MAURICE SIMMONS, as Property Clerk of the Police Department of the City of New York, Appellant.

JOHN SMITH, Respondent, *v.* MAURICE SIMMONS, as Property Clerk of the Police Department of the City of New York, Appellant.

Argued April 9, 1943; decided May 27, 1943.

450

*Thomas D. Thacher,* Corporation Counsel (*Paxton Blair, James Hall Prothero* and *Nathan B. Silverstein* of counsel), for appellant.

*Harry J. Harrison* and *Jerome J. Fendrick* for Louis Hofferman, respondent.

*Arthur Morris* and *Morris Okoshken* for Harry Rader, respondent.

*Jacob Siegfried* for Albert Rivera, respondent.

*Jacob Siegfried* for John Smith, respondent.

DESMOND, J. Each of the four above-entitled actions is in replevin. In each action the plaintiff demands that the courts decree the return to him of money taken from him by New York City police officers and now held by the defendant, who is the property clerk of the New York City Police Department. In each case (except the Hofferman case, where there is a general denial only) the property clerk's answer contains a denial that plaintiff is entitled to a return of the money, and a separate defense to the effect that the monies seized and held by the police are the " proceeds of crime ". Each plaintiff has heretofore pleaded guilty, in other proceedings, to a

crime connected with gambling: Hofferman, to the crime of book-making (Penal Law, § 986); Rader, to the crimes of using a room for policy playing and possessing policy slips (Penal Law, § 974); and Rivera and Smith to the crime of possessing policy slips (Penal Law, § 974). After these pleas had been entered and punishments had been meted out by the criminal courts, the plaintiffs demanded back from the property clerk the monies in controversy. He refused to surrender them, and these actions followed. Each plaintiff has been awarded judgment, plaintiff Hofferman after a trial without a jury in the Municipal Court of the City of New York, and the other plaintiffs on the granting of their motions for summary judgment, on affidavits. In each case a majority of the Appellate Division Justices held that neither the Penal Law (§§ 971, 977, 978, 979) nor the New York City Administrative Code (§ 435–4.0; L. 1937, ch. 929) nor any other controlling authority justified the continued retention of these monies by the property clerk. We shall discuss those statutes again later; we hold that their language and meaning is not determinative of the issues here.

Since these are replevin actions, we concern ourselves not so much with the defendant's right to hold as with the plaintiff's right to recapture. We must, therefore, examine the record to see whether the respective plaintiffs have conclusively established their rights to the monies or whether, on the other hand, enough appears to raise triable issues of fact on which the trial courts could decide against the plaintiffs. All the plaintiffs admit their arrests on the gambling charges, their pleas of guilty and the seizure of the monies at the times of the arrests. Plaintiff Hofferman, at the trial of his civil suit, admitted that the money he is suing for ($150) was taken by the police from a table in a room in which there were sixty people or more, that the money represented bets placed by those in the room and that after the seizure he (Hofferman) made good his customers' losses by reimbursing to them the amounts of their bets. In the *Rader* case plaintiff, moving for summary judgment, merely avers that at the time of his arrest the moneys which are the subject of the action ($1,012.50) were taken by the policemen from plaintiff's trousers pockets and from a closet, which the officers opened with a key taken from plaintiff. In the *Rader* case the answering affidavits of

the police officers say that they found thousands of policy slips in a locked box in the apartment and that both Rader and the man found in the apartment with him had keys to that box. On Rader's person, say the officers in their opposing affidavits, were slips of paper containing records of policy collections, and on the premises, affiants say, were other records showing that Rader had a number of policy collectors working for him who collected large sums daily. In the locked closet where some of the seized money was found there were found also, swear these officers, quantities of envelopes such as are used by policy collectors, a small adding machine, coin wrappers, etc. The affidavits contain further statements to the effect that plaintiff Rader admitted that he was a policy "banker," employing a number of collectors, also it is alleged that the apartment, though occupied by Rader, was leased under an assumed name and that Rader actually resided elsewhere, that the officers had had him under observation for a long time and had seen him meet the policy collectors on the street and hand to, and receive from those collectors, certain envelopes.

In the *Smith* and *Rivera* cases, the plaintiffs' affidavits for summary judgment simply allege that certain stated sums of money were taken from plaintiffs by the police at the time of the arrests, that the property clerk has refused to return the monies, and that the answers of defendant are sham. The police officers, answering, filed affidavits in which they say that they had followed the two plaintiffs to an apartment, which they entered, finding Smith and Rivera sitting at a table counting money, that both plaintiffs admitted to the officers that the money was that day's receipts from policy collectors, that a slip of paper found with the money contained the names and numbers of the policy collectors, and that each plaintiff admitted that he was a "pickup" man for those policy collectors.

We think it clear that these sworn statements of the police officers make it impossible to grant summary judgments, or judgments on the law, in favor of these plaintiffs. Replevin is strictly a possessory action and plaintiff, to recover, must show a possessory right recognized by law. (*Roach* v. *Curtis*, 191 N. Y. 387, 390.) He must be the owner of the property, or lawfully entitled to its possession. (*Rockwell* v. *Saunders*, 19 Barb. 473, 482.) Where, as in these cases, the claim is not of

wrongful taking, but of wrongful detention, it is for the plaintiff to plead and prove facts showing that the detention is wrongful. (Rule Civ. Prac. rule 271, Civ. Prac. Act, § 1096.) "The plaintiff, seeking to take property out of the possession of the defendant, was bound to show title in himself, and the defendant could defend itself by showing that he [plaintiff] did not have title, and thus did not have the right to take from it [defendant] the possession which it had acquired." (*Griffin* v. *Long Island R.R. Co.*, 101 N. Y. 348, 354, see *Seidenbach* v. *Riley*, 111 N. Y. 560, 566; *Kaufman* v. *Simons Motor Sales Co.*, 261 N. Y. 146, 149.) Plaintiffs may not recover "unless entitled to the possession when they commenced their action." (*Wood* v. *Orser*, 25 N. Y. 348, 350.) "As the plaintiff therefore had no title to these notes, and no right to the possession of them when this action was commenced, it had no right to take them from the possession of the defendant, no matter how imperfect its [defendant's] title was. * * * " (*Black River Ins. Co.* v. *New York State L. & T. Co.*, 73 N. Y. 282, 291.) A plaintiff in replevin must always show a wrongful detention, and unless plaintiff "has that general or special property and right of immediate possession, it cannot be true that it [the chattel] is wrongfully detained from him." (*Scofield* v. *Whitelegge*, 49 N. Y. 259, 261.) Such is the basis of the rule (54 C. J. p. 439) that he who gets possession only under and by virtue of an illegal transaction cannot recover. "To hold otherwise would give a premium to a law-breaker." (*Desmare* v. *United States*, 93 U. S. 605, 612.)

Assuming, for present purposes, the truth of the police officers' statements, and applying thereto the settled rules governing replevin, we ask what right have the plaintiffs to demand that the courts get these monies back for them? What present title or possessory rights have they to show? The State Constitution itself outlaws the very acts these plaintiffs have pleaded guilty to. (Const. art. I, § 9.) The law affords a professional gambler no protection at all as to the monies he takes in (Penal Law, § 994, *Bamman* v. *Erickson*, 288 N. Y. 133.) This court has said that the professional gambler is an "outlaw" (*Watts* v. *Malatesta*, 262 N. Y. 80, 83) and that one who wagered with such a gambler "never parted with the title to his money." (*People* v. *Stedeker*, 175 N. Y. 57, 62.) The activities of the plaintiffs, assuming the truth

of the answering affidavits, were completely illegal. From such activities there could arise no rights at all. (*"Nemo allegans turpitudinem suam est audiendus"* — *"Nemo ex proprio dolo consequitur actionem"*.) To say that a professional gambler, running a betting room or supervising a squad of policy collectors, can invoke the aid of the courts to get back from the police monies which have been bet with the professional gambler in defiance of the law, is to say that the courts will recognize and protect an outlawed business, and give their sanction to titles and possessory rights founded only on lawbreaking (see *Woodworth* v. *Bennett,* 43 N. Y. 273, 276, *Morgan Munitions Supply Co.* v. *Studebaker Corp.,* 226 N. Y. 94, 99, *Gonch* v. *Republic Storage Co.,* 245 N. Y. 272, *Flegenheimer* v. *Brogan,* 284 N. Y. 268). " No one shall be permitted  *  *  * to acquire property by his own crime.  *  *  * He cannot vest himself with title by crime." (*Riggs* v. *Palmer,* 115 N. Y. 506, 511, 513.) Plaintiffs here are not helped by cases like *Lynch* v. *St. John* (8 Daly 142) and *Duboff* v. *Haslan* (195 App. Div. 117), which command the return by the property clerk to its *lawful owner* of stolen property after the trial, or require the property clerk to return to its owner property seized on suspicion of having been stolen but not thereafter shown to have been so stolen. (See *Simpson* v. *St. John,* 93 N. Y. 363.)

It is true that Penal Law sections 977, 978 and 979, authorizing the seizure and destruction of gambling implements, contain no directions as to the disposition of monies seized from gamblers by the police (see, however, Penal Law, § 985-a, which does deal with the disposition of monies found in slot machines). But the omission from the statutory law of specific rules governing the conduct of police officials with respect to seized monies does not enlarge the rights of professional gamblers. The failure of the Legislature to complete the statutory scheme as to gambling by providing for the ultimate disposition of monies seized from professional gamblers does not make lawful the possession of such monies by such persons or confer on them legal title thereto. " However, whatever may or may not be done with the money in the custody of the court, the power of our courts, either at law or in equity, cannot be invoked in aid of one showing a violation of the law, to complete the illegal transaction and secure to the violator the fruits of his outlawry." (*Dorrell* v. *Clark,*

90 Mont. 585, 592.) For similar reasons and because we are here passing on the rights of the plaintiffs and not delimiting the duties of the property clerk we need not now construe section 435–4.0 of the Administrative Code of the City of New York. The language of that part of the Administrative Code, taken from sections 331 to 335 of the former New York City Charter (L. 1901, ch. 466) deals, among other things, with money " alleged * * * to be the proceeds of crime." There was a difference of opinion in the Appellate Division, in these cases, as to whether monies seized from a professional gambler in a gambling place are to be considered the " proceeds of crime " within the meaning of the Administrative Code, the doubt arising because the headings and some of the language of the Administrative Code suggest that only stolen property is referred to. Nonetheless no one of these plaintiffs may recover if, upon a trial of the facts in his case, it shall appear that his only claim to these moneys arises from his receipt of them in the form of bets made with him while he is doing business as a professional gambler.

In the Hofferman action the judgments should be reversed and a new trial granted with costs to the appellant to abide the event; in the other three actions (Rader, Rivera and Smith) the judgments should be reversed and the motions for summary judgment denied, with costs in all courts.

RIPPEY, J. (dissenting). I dissent in the *Hofferman* case and vote to affirm the judgment for plaintiff. It has been found, after a trial of the issues, that the moneys in question were not the proceeds of crime, nor the instruments of a gambling process and were the property of plaintiff to which he was entitled to immediate possession. This court has no power to disturb the facts so found and affirmed by the Appellate Courts below. I concur in the result in the *Rader, Rivera* and *Smith* cases on the ground that triable issues of fact were presented by the pleadings which could not be resolved on motions for summary judgment.

LEHMAN, Ch. J., LOUGHRAN, LEWIS and CONWAY, JJ., concur with DESMOND, J.; RIPPEY, J. dissents as to the Hofferman action, and concurs in the result in the Rader, Rivera and Smith actions in a separate opinion; FINCH, J., taking no part.

Judgment accordingly.