**UNITED STATES of America,**
**Plaintiff,**

v.

**Tatiana G. HERZFELD, Thomas E. Rosetti, Chief Property Clerk, New York City Police Department, and the City of New York, Defendants.**

**No. 65 Civ. 429.**

United States District Court
S. D. New York.
July 19, 1967.

Robert M. Morgenthau, U. S. Atty. for S. D. of New York, for plaintiff, United States. Dawnald R. Henderson, Asst. U. S. Atty., of counsel.

J. Lee Rankin, Corp. Counsel, for defendant Thomas E. Rosetti, Nathan B. Silverstein, Asst. Corp. Counsel, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

This is an action by the United States to enforce a tax lien against $13,150.00 held by the defendant Rosetti as Chief Property Clerk of the New York City Police Department. Jurisdiction is based on 28 U.S.C. §§ 1340, 1345, and Int.Rev.Code of 1954, §§ 7402(a), 7403. The United States now moves for summary judgment pursuant to Rule 56, F.R.Civ.P.

The facts, at least insofar as they have been thus far developed, appear to be undisputed. On March 3, 1959, an indictment charging defendant Herzfeld with fifty-one counts of criminal abortion was returned by the New York County Grand Jury. On March 4 an arrest warrant and a search warrant issued from the New York Court of General Sessions for the arrest of Herzfeld and the search of her apartment at 176 East 64th Street in New York City. These warrants are in no way challenged in the present action. On March 5 the warrants were executed; the search resulted in the seizure of the $13,150.00 in cash which is the subject of this action. The money is presently in the possession of the defendant Rosetti. However, the particulars of the March 5 seizure—the steps taken by the police, the reactions of the defendant, the location and denomination of the currency— are not spelled out in the papers submitted on this motion.

The defendant Herzfeld pleaded guilty to the fifth count to cover the indictment on November 4, 1959. She is presently residing in Tel Aviv, Israel. While personal service in this action has been effected upon her pursuant to 28

U.S.C. § 1655, for all practical purposes she has defaulted with respect to the sum here involved. The dispute is thus between the United States and the Police Property Clerk.

The United States lays claim to the fund involved by reason of two unsatisfied tax assessments against defendant Herzfeld. One, in the amount of $27,402.58, was assessed on March 11, 1959, and notice of the lien was duly filed on March 16, 1959 with the Register of the City of New York. Another assessment for income tax liabilities in the amount of $297,581.31 was returned on March 15, 1961; notice of this lien was filed with the Register of the City of New York on March 16, 1962. Notices of levy were served on the defendant Rosetti on March 12, 1959 and September 24, 1962. His failure to honor these levies led to this action.

The position of the Police Property Clerk has been clarified by his answer to interrogatory fifteen served by the government, and calling upon the defendant to "set forth any fact or facts which would indicate that the property seized and now in the possession of * * * Thomas E. Rosetti, was not the property of * * * Tatiana G. Herzfeld and/or

that said property was not legally acquired." The property clerk's response, in pertinent part, was "that said Herzfeld carried on the activity of illegal abortions and pleaded guilty on November 4, 1959; that the moneys were kept by her at the premises 176 East 64th Street, New York; that she failed to show the Police that said moneys were lawfully obtained; and, in general, all the facts and circumstances of the case." It appears that no statement concerning the source of the funds was ever secured from Herzfeld,[1] and there is little likelihood that she will appear as a witness at the trial.

The legal bases for the property clerk's retention of monies alleged to be the proceeds of illegal abortions are spelled out in some detail in the Administrative Code of the City of New York § 435–4.0; see N.Y.Code Crim.Pro. §§ 685–691. Under subsection (b) "all property or money suspected of having been unlawfully obtained or stolen or embezzled or of being the proceeds of crime or derived through crime * * *, that shall come into the custody of any member of the police force, * * * shall be given, as soon as practicable, into the custody of * * * the property clerk."[2]

1. The defendant property clerk has stated, in response to an interrogatory served by the government, that "Herzfeld made no statement to Det. Theresa L. Heath, N.Y.DAO Squad, who seized the said moneys, or to any other police officer, as to whether the said moneys were lawfully acquired or the proceeds of illegal abortions." Furthermore, the "defendant Rosetti has no knowledge or information as to any such statement to the District Attorney's Office of the County of New York."

2. "Custody of property and money.—All property or money taken from the person or possession of a prisoner, all property or money suspected of having been unlawfully obtained or stolen or embezzled or of being the proceeds of crime or derived through crime or derived through the conversion of unlawfully acquired property or money or derived through the use or sale of property prohibited by law from being held, used or sold, all property or money suspected of having been

used as a means of committing crime or employed in aid or in furtherance of crime or held, used or sold in violation of law, all money or property suspected of being the proceeds of or derived through bookmaking, policy, common gambling, keeping a gambling place or device, or any other form of illegal gambling activity and all property or money employed in or in connection with or in furtherance of any such gambling activity, all property or money taken by the police as evidence in a criminal investigation or proceeding, all property or money taken from or surrendered by a pawnbroker on suspicion of being the proceeds of crime or of having been unlawfully obtained, held or used by the person who deposited the same with the pawnbroker, all property or money which is lost or abandoned, all property or money left uncared for upon a public street, public building or public place, all property or money taken from the possession of a person appearing to be

Property which remains unclaimed for a period of three months is paid into the police pension fund.[3] Provision is made for the return of property to one who establishes that he is the rightful owner;[4] most important insofar as these parties are concerned, is the requirement that a claimant has the burden of establishing that the "property or money was held and used in a lawful manner."[5]

 It is common ground that New York law determines whether or not the defendant Herzfeld has any property to which the tax lien may attach. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 1285, 4 L.Ed.2d 1365 (1960); see United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); Int. Rev.Code of 1954, § 6321. Naturally enough, the government's rights by reason of the lien can rise no higher than the taxpayer's property interest in the contested fund. City of New York v. United States, 283 F.2d 829 (2d Cir. 1960). It is also undisputed that under the law of New York a wrongdoer has no possessory interest in property illegally acquired. Hofferman v. Simmons, 290 N.Y. 449, 49 N.E.2d 523 (1943); United States v. Clinton, 260 F.Supp. 84, 88 (S.D.N.Y.1966); United States v. Pagan, 140 F.Supp. 711 (S.D.N.Y.1955).

 The submissions of the parties disclose that there is a clear issue of fact as to whether the $13,150.00 was the personal property of the defendant Herzfeld, as the government contends, or the proceeds of illegal abortions as the Police Property Clerk contends. The testimony of the police officers who conducted the search and seizure may well throw light on this issue. Summary judgment is therefore inappropriate. See United States v. Clinton, supra; United States v. Lester, 235 F.Supp. 115 (S.D.N.Y.1964); Hofferman v. Simmons, supra; People v. Sylvester, 19 N.Y.S.2d 606 (Newburgh Recorder's Court 1940).

 Anticipating that little or no proof will be adduced at the trial, the government has launched a vigorous constitutional attack against § 435.4.0(f) of the Administrative Code which explicitly places the burden of proving that the "money was held and used in a lawful manner" upon the claimant, here the United States standing in the shoes of Herzfeld. Most of the constitutional objections concerning lack of notice and hearing are wide of the mark. The New York law provides for the full adjudication of claims. N.Y.Code Crim.Pro. §§ 685–689; Administrative Code of the City of New York § 435–4.0(c), (d). And the New York courts recognize that notice and a hearing are constitutional prerequisites to a forfeiture proceeding. People ex rel. Robert Simpson Co. v. Kempner, 208 N.Y. 16, 101 N.E. 794, 46

insane, intoxicated or otherwise incapable of taking care of himself, that shall come into the custody of any member of the police force, magistrate or criminal court, and all property or money of inmates of any city hospital, prison or institution except the property found on deceased persons that shall remain unclaimed in its custody for a period of one month, shall be given, as soon as practicable, into the custody of and kept by the property clerk."

3. § 435–4.0(e); see § B 18–3.0; United States v. City of New York, 82 F.2d 242, 244 (2d Cir. 1936).

4. § 435–4.0(c).

5. "f. Lawful property right to be established.—In any action or proceeding against the property clerk for or on account of any property or money in his custody, a claimant from whose possession such property or money was taken or obtained, or any other claimant, shall establish that he has a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner. In any such action or proceeding, a claimant who derives his title or right by assignment, transfer or otherwise from or through the person from whose possession such property or money was taken or obtained, shall further establish that such person had a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner."

L.R.A.,N.S., 970 (1913); see Tracey v. Corse, 58 N.Y. 143, 147, 149 (1874). The hearing customarily is had in a plenary civil action when the claimant brings suit against the authorities in conversion, Carr v. Hoy, 2 N.Y.2d 185, 158 N.Y.S.2d 572, 139 N.E.2d 531 (1957), or replevin. Michalowski v. Ey, 4 N.Y.2d 277, 174 N.Y.S.2d 6, 150 N.E.2d 399 (1958). Moreover, in this action to foreclose a tax lien the government is obviously not disadvantaged by any hypothetical failure to provide notice and hearing. This case accordingly does not present the issue whether the claim of an innocent third party may be irrevocably defeated by the mere lapse of three months.[6]

The government's objection to the arbitrary shifting of the burden of proof to the claimant to prove that the money was held in a lawful manner is not so easily overcome. It is true that as a general rule the United States has the burden of proving that the taxpayer has a property interest under state law which can be reached by the federal lien. Note, Federal Priorities and Tax Liens, 63 Colum.L.Rev. 1259, 1285 & n. 251 (1963), citing United States v. Stock Yards Bank, 231 F.2d 628 (6th Cir. 1956) (Stewart, J.); see Hall v. United States, 258 F.Supp. 173 (S.D.Miss.1966). To this extent the burden imposed by subsection (f) is fully consistent with established practice. In addition, the burden imposed on the claimant by the Administrative Code, challenged here as unconstitutional, is not dissimilar to provisions found in federal law; for example, 19 U.S.C. § 1615 imposes the burden of proof upon the claimant seeking the return of property in actions for forfeiture under the customs law. See The Marion Phillis, 36 F.2d 688 (2d Cir. 1929). There is, then, precedent for taking a

person's property away and then challenging him to prove his title when he seeks to get it back.

But perusal of the New York authorities discloses some troublesome cases. Roxy Athletic Club, Inc. v. Simmons, 80 N.Y.S.2d 277 (App.Term 1st Dep't 1944), reversing 44 N.Y.S.2d 47 (City Ct.N.Y. County 1943), apparently authorized the Police Property Clerk to retain monies which were simply suspected, but not proven, to be the proceeds of crime. This was true although the plaintiff claimant had been acquitted in a prosecution for violation of the gambling laws, a holding which was adhered to in Rivera v. Rosetti, 38 Misc.2d 1030, 239 N.Y.S.2d 691 (Civ.Ct.N.Y.County 1963), and Sochemaro v. Rosetti, 6 Misc.2d 23, 161 N.Y.S.2d 454 (Mun.Ct.1957). So too, in Costello v. Simmons, 269 App.Div. 823, 55 N.Y.S.2d 735 (1st Dep't 1945), aff'd per curiam, 295 N.Y. 801, 66 N.E.2d 581 (1946), the court found issues of fact requiring trial when the property clerk simply challenged the claimant to prove that money accidently left in a taxicab was not the proceeds of gambling. The *Costello* decision prompted one New York judge to observe, "It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury." Gonzalez v. Leuci, 120 (85) N.Y.L.J. 993, col. 4 (Nov. 1, 1948). Several of these cases involving the Police Property Clerk demonstrate that monies alleged to be illegal proceeds "seem to float in a state of suspension untouchable by either the authorities or the miscreant *with the advantage leaning toward the police authorities by reason of possession which the courts seem reluctant to disturb.*" 1959 New York Opinions of the Attorney General 132, 133 (emphasis added.)

---

6. See § 435.4.0(e). Most forfeiture statutes, unlike those in the instant case, provide for various forms of remission to relieve cases of hardship. Compare N.Y.Agriculture & Markets Law, McKinney's Consol.Laws, c. 69, § 44(3); N.Y. Public Health Law, McKinney's Consol. Laws, c. 45, § 3353(8); N.Y.Public Service Law, McKinney's Consol.Laws, c. 48, § 24; 18 U.S.C. § 3617; 19 U.S.C. § 1618; 49 U.S.C. § 782.

While examination of the New York authorities indicates that some cases of this nature might raise problems of constitutional dimension, it is by no means clear that this is one of them. I am not inclined to assess the Administrative Code's burden of proof provision as an abstract question of constitutional law. On this record at this time no constitutional issue capable of determination is presented. In any event when the case is tried the evidence may well render immaterial any abstract questions of burden of proof. Compare United States v. Clinton, 260 F.Supp. 84 (S.D.N.Y. 1966).

The government's motion for summary judgment is denied.

It is so ordered.