343 So.2d 622 (1977)
Dale BAKER and Alvin Craycraft, Appellants,
v.
STATE of Florida et al., Appellees.
No. 76-941.
District Court of Appeal of Florida, Fourth District.
March 4, 1977.
Rehearing Denied April 7, 1977.
Joe M. Mitchell, Jr., Melbourne, for appellants.
Robert L. Shevin, Atty. Gen., Tallahassee, and Anthony J. Golden, Asst. Atty. Gen., West Palm Beach, for appellees.
LETTS, Judge.
This is an appeal from an order denying the return of certain evidence, to wit: Five thousand five hundred forty ($5,540.00) dollars in cash, stolen from the appellants and used as evidence by the State to secure the conviction of the thieves who stole it.
We are unable to agree with the order of the trial judge, and his order is hereby reversed.
*623 The facts in this case are best set forth in the trial judge's order, as follows:
The petitioners ... . came from Ohio to Florida for the purpose of buying ten thousand dollars' worth of marijuana. They met the (thieves), who promised to sell the petitioners a large quantity of marijuana. After many weird preliminaries where both sides expressed concern about being "ripped-off"... . the parties met on a lonely road at night in west Cocoa, arriving in two separate vehicles to consummate their illegal transaction. The (thieves) had theretofore hidden in the nearby woods three plastic trashbags filled with sticks and weeds and trash. The money was placed on the seat in the (thieves') car... . It was a bizarre scene. The (thieves) would leave supposed samples of the marijuana on the road for the petitioners to test and would show them the filled trashbags but would permit no close inspection; after much of this silly jockeying around, the circumstances finally got right for the defendants and they jumped into their car and sped away with the money while the petitioners, thinking they had only been shorted on weight, threw the trashbags in their car and attempted, unsuccessfully, to follow the defendants; when the petitioners finally inspected their purchase, they knew what had happened. After a conference, they decided against the slogan, "the next time you need help, call a hippie", and that they needed the help of the police. Being justifiably embarrassed by the true facts, the petitioners decided that in order to secure the assistance of the police it was going to be necessary to concoct a story about their having been robbed of their money by some unknown robbers, whom they would describe as the three (thieves); this was done, and it worked, and the police thereafter arrested the (thieves) while in a taxi headed toward a nearby airport, and charged them with robbery; the $5,540.00 now in the custody of the court was found partly in paper bags abandoned under the taxi and partly on the (thieves); by the time the (thieves) case came on for trial, the true circumstances had become known to the State, and during trial the State abandoned their theory of robbery and the (thieves) entered a plea of guilty to grand larceny; the petitioners now want the court to return to them the recovered portion of their purchase money.
In the petition for the return of the money, filed by the appellants, in the trial court, it is argued that the only authority which would permit the State of Florida to retain the evidence would be by a statutory forfeiture, such as was discussed in the case of Waterloo Distilling Corporation et al. v. United State (In re Various Items of Personal Property), 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931). Pursuant thereto, the appellants further argued that the only statutory forfeiture provision contained in any statute in the State of Florida is set forth in Chapters 943.42 and 943.43, as follows:
943.42 Unlawful to transport, conceal, or possess contraband articles; use of vessel, motor vehicle, or aircraft. It is unlawful:
(1) To transport, carry, or convey any contraband article in, upon, or by means of any vessel, motor vehicle, or aircraft.
(2) To conceal or possess any contraband article in or upon any vessel, motor vehicle, or aircraft.
(3) To use any vessel, motor vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.
943.43 Forfeiture of vessel, motor vehicle, or aircraft; exceptions. Any vessel, motor vehicle, or aircraft which had been or is being used in violation of any provision of s. 943.42 or in, upon, or by means of which, any violation of said section has taken or is taking place shall be seized and may be forfeited. No vessel, motor vehicle, or aircraft used by any person as a common carrier in the transaction of business as a common carrier nor any other vessel, motor vehicle, or aircraft shall be forfeited under the provisions of ss. 943.41-943.44 unless the owner or person *624 legally in charge of such vessel, motor vehicle, or aircraft was at the time of the alleged illegal act a consenting party or privy thereto. No vessel, motor vehicle, or aircraft shall be forfeited under the provisions of ss. 943.41-943.44 by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such vessel, motor vehicle, or aircraft was unlawfully in the possession of a person who acquired possession thereof in violation of the criminal laws of this state or any political subdivision thereof, any other state, or the United States.
We must agree with the appellants that this statute is not applicable in the instant case. Quite apart from the fact that, in the case now before us, we are dealing with trash rather than contraband, this forfeiture provision is exclusively limited to any vessel, motor vehicle or aircraft, and makes no provision for the forfeiture of money or currency used in violation of Chapter 893 of the Florida Statutes, relating to drug abuse prevention and control. It is also clear that the Florida Supreme Court has consistently refused to permit forfeitures absent statutory authority, and has construed any such authority strictly. City of Miami v. Miller, 148 Fla. 349, 4 So.2d 369 (1941); Boyle v. State, 47 So.2d 693 (Fla. 1950).
On appeal, the State argued that even if this be so, the power of the Court should never be invoked to allow violators of the law to obtain "the fruits of their outlawry," and for this proposition, cited Hofferman v. Simmons, 290 N.Y. 449, 49 N.E.2d 523 (1943); however, in that case, the money seized was the fruit of gambling, and was not the lawful property of the claimants. On this very question of gambling, the Florida Supreme Court held in City of Miami v. Miller, 148 Fla. 349, 4 So.2d 369 (1941), that not even gaming money could be forfeited, unless the authority to do so was supplied by the legislature. This, of course, has been accomplished in Section 849.12 of the Florida Statutes (1975).
The State further argued that the appellants had no right to petition the trial court for the return of the money, as they did, and should have followed the requirements set forth in Section 116.21, Florida Statutes (1975).[1] We find no merit to this argument, in that the record does not reflect that the authorities ever followed the procedure set forth under said statute, invocable solely at the discretion of the sheriff and clerk of the court involved.
In the order denying the return of the money, the trial judge asked the rhetorical question:
Has law and society so advanced... . that those who completely disregard the law can make a mockery of it and use the court to accomplish their ends? Can a right arise from one's own wrong?
*625 The judge went on to concede the problem before him was novel and that he could cite no authority for his decision. Nonetheless, he entered the order, denying the return of the money, on the basis that "Everybody knows it jist (sic) ain't right", and in so holding, declared his confidence that this appellate court could provide the vehicle, with citations, to uphold him.
Unfortunately, we cannot find them, and are forced to agree with the appellants' conclusion that the judge's action ". . jist (sic) ain't legal." The appellants were never convicted, nor were they even charged with, the commission of any crime, nor was there any indication that the money did not rightfully belong to them, or that actual contraband was involved. Accordingly, in the absence of statutory authority to the contrary, we must reverse the trial judge's ruling and direct that the money in question be returned.
In effect, under the present state law, the courts and police authorities are being used as collection agencies, at the taxpayers' cost, to assist in the return of money to those who attempt to use it for criminal activity. The legislature should address itself to such a clearly undesirable assist.
DAUKSCH, J., and SCHWARTZ, ALAN R., Associate Judge, concur.
NOTES
[1] Subparagraphs (1) and (2) of said Statute read as follows:

116.21 Unclaimed bond money; limitation.
(1) The sheriffs and clerks of the courts of the various counties of the state are hereby authorized at their discretion on or before September 25 of each and every year hereafter to pay into the fine and forfeiture fund of their respective counties any or all unclaimed bond and evidence moneys in their hands or custody by virtue of their office as sheriff or clerk, which unclaimed bond and evidence money came into their hands in cases which have been finally disposed of or bonds estreated and no information filed, or defendant bound over and no information filed, or in which no case has been made, prior to January 1 of the preceding year and for which moneys claim has not been made. (2) The sheriffs and clerks of the various courts of the respective counties may, during the month of July of each year, hereafter make and compile a list of any or all unclaimed bond and evidence moneys which came into their hands as provided in subsection (1) above. Such compilation shall list in addition to the name of the defendant, the names of such bondsmen, if known, and shall specify the respective amounts of such unclaimed bonds or evidence moneys. Such list or compilation shall be published one time during the month of July in a newspaper of general circulation in the county served by such sheriff or clerk and said notice shall specify that unless such bond moneys or evidence moneys are claimed on or before September 1 after such publication that same shall be declared forfeited to such county. Proof of such publication shall be made by the publisher of such newspaper and shall be filed and recorded in the minutes of the county commissioners of such county.